May it please the court. Good morning, your honors. Initially, I'd just like to introduce Mr. Evan Howes, our research and writing specialist who assisted on the brief and is here assisting in argument. So he doesn't get to go to New Orleans because you're here where your office is, he gets to come? I didn't have the power to make that ruling, your honor. I wish I did though. This case presents the issue of whether the government breached the plea agreement by violating its promise not to oppose Mr. Rosales' request for acceptance of responsibility. As the court will recall, the government agreed not to oppose acceptance and the PSR in this case imposed an enhancement for obstruction of justice and denied acceptance. Now in our brief, we talk about direct and indirect ways that the government breached the plea agreement. But for the court's benefit, I just want to cut to the chase and talk about the two most direct and blatant breaches of the plea agreement. First, even though the PSR denied acceptance, the government just before sentence was imposed and the court said, do you have anything further to add? The government said, your honor, we believe the guidelines are appropriate. Well, of course, the guidelines denied acceptance. So it's a direct breach. There's no doubt about it. The second direct breach came… With regard to that, I mean, I guess I'm asking is the court asked the U.S. attorney for their opinion. It wasn't like it was uninvited that the U.S. attorney spoke out. It was only after the court asked if they had anything to say. It was a question asked by the court. Yes, your honor. It's kind of interesting because the court gave the government its last chance to say whatever it wanted. It said, do you have anything to add? And in response to that, they chose to say the guidelines are appropriate and direct contravention of the plea agreement. So it wasn't like, you know, what do you think of obstruction? What do you think of whatever? It was like, what do you want to add before I impose sentence? And they breached. Did they notify the court that the agreement was that they would not object to acceptance of responsibility? Was that told to the court? I believe that was in the PSR. The court was on notice of that? If the court read the PSR, the court was on notice of it, which we would presume, wouldn't we? Of course the court reads the PSR, don't they? Your honor, even if the court was on notice of it, Mr. Rosales was entitled to the benefit of his bargain. The bargain wasn't you plead guilty, the PSR will tell the court what the bargain is, and then the government gets to come in the courtroom and say the guidelines which deny acceptance are appropriate. I mean, that's not the answer. I agree had the government gotten up and maybe said nothing and not directly breached, then maybe I'd have a harder argument. I perfectly understand where the court's going with the case law on that. Counsel, you want us to write a law that if the judgment or enhancement has an obstruction of justice enhancement that the government is silent, the government doesn't say a word about whether or not he would accept responsibility and get credit on offense points. You want us to say that because the government is silent, that means they oppose that and is inconsistent with their plea agreement? No, I don't want you to write that, your honor, and that's not this case. In this case, the government said the guidelines are appropriate, so the government spoke out. The government wasn't silent. In addition, and this is the second blatant breach that I wanted to talk about. The government didn't say anything about acceptance of responsibility. No, but the government said the guidelines are appropriate, and the guidelines included denial of acceptance. That's even worse for this. Now you want us to, for the government to look at the guidelines, and that is unfavorable to the defendant, and therefore the government's responsible for that, and they've violated their agreement. The government's responsible not to believe. Because it fits the guidelines, regardless of why. Well, it can't be regardless of why, because clearly we know the court reviews the PSR. The court sees that the PSR denied acceptance, and the government, contrary to the breach, is saying that the guidelines in the PSR that we know the court reviewed are appropriate. I'm asking you, where does the government oppose acceptance of responsibility offense? In two places. Number one, it's sentencing by saying the guidelines that deny acceptance are appropriate. You want us to say that. The guidelines don't allow that, therefore the government's responsible for it, and in effect has opposed acceptance of responsibility. If the government says that denial of acceptance, per the calculation of the guidelines, is appropriate, then the government has breached, yes. You started off by saying if the government denies it, you're equating denial by silence because of the actual sentence. Let's take a different hypothetical. Let's say the government agrees not to oppose only a four-level enhancement, and the plea agreement gives it—the PSR gives a ten-level enhancement. And the government says, that PSR is right. That's appropriate. Do you think that's a breach, Your Honor? I would say so, and that's no different than what happened in this case. The government says, yeah, those guidelines are correct. You're an excellent lawyer. Thank you, Your Honor. Thank you. With regard to the second breach, which I think is most blatant, in the government's sentencing pleading, the government said that Mr. Rosales' obstruction inflated the guidelines, and without his obstruction, he would have been entitled to a level 40 and then a level 30 with acceptance of responsibility. So what the government's saying is because of his obstruction, he cannot get the 40 and he cannot get the level 37. But the government agreed that with his obstruction, he could get the level 37. So what the government is doing by affirming the calculation in the PSR is opposing acceptance. I think those two breaches are blatant. I think they breach the plea agreement. And if the court wants to get into the other indirect breaches in our brief, when it writes the opinion— Yes, Mr. Sokoloff, what I was asking earlier is, was the judge on notice that the agreement was that the government would not oppose acceptance of responsibility? If the AUSA brought that to the court's attention, that that was their agreement out of fairness to let the court know that while they thought he should get obstruction of justice, that their agreement was that they would not oppose acceptance of responsibility? If they said that at sentencing, then I don't think I'd be here. But they didn't say that at sentencing. And the rule can't be if it's in the PSR and the government breaches the plea agreement, well, so what? Big deal because it was in the PSR. The government's there having obtained Mr. Rosales' guilty plea for a bargain, as the Supreme Court said in Santabello. So if it's in the—I mean, that would just render nugatory any plea agreement that the government breached if it's in the PSR. Was there an ethical obligation for the U.S. attorney to bring this to the court's attention, that the agreement said they would not oppose acceptance of responsibility? Well, I think there are two different questions there. Number one, what I'm arguing is I think there was at least a legal responsibility and a responsibility per the agreement for the government not to argue contrary to the plea agreement. Given the government's vehement argument for obstruction, now we're getting into the indirect breach, I think they did have an obligation to speak out and say we stand by the plea agreement. And that's really what the government's 28J letter states has no horses. And, of course, has no horses is a horse of a different color than this case. And it has no horses. The government argued for obstruction, but they said we stand by our agreement for acceptance. Had the government done that, I would have no complaint. But the government didn't do that. So my answer is, number one, they have an obligation not to argue contrary to the plea agreement, as they did here. And number two, in a case like this, where they vehemently argue and go overboard on the facts, talking about how the nephew was traumatized, where they vehemently argue for the obstruction, yes, I think that they should have done what happened and has no horses. Now, there was no objection. Is that correct? That's correct. So are we reviewing this for clear error? Yes, you are. And I think that that's why I started and ended with the two clear breaches, because I think they are clear. How do we know that the court seemed to be concerned with obstruction of justice, that the court would not have gone ahead and given the sentence it did? The government's agreement was that it would not oppose it, but the court is not obligated to not give it. And if the judge, looking at the facts and the PSR, thought that it was obstruction of justice and he wasn't entitled to acceptance of responsibility and we review it under clear error, is there a problem there for you? No, I'm glad you asked that, as a matter of fact, Your Honor, because there are 11 reasons why this meets the effect on substantial rights test. First, the obstruction wasn't egregious. He asked his nephew to take responsibility, and the nephew said no, and that was it. Second, the government knew about that at the guilty plea. He pleaded guilty. He submitted a statement for acceptance. The lawyer mentioned acceptance during the sentencing, and the obstruction was part of the factual basis. Third, the district court, unfortunately, misunderstood the law on acceptance and said obstruction eliminated any possibility of acceptance. Had the government spoken up, I believe it would have made all the difference in the world. We have a district court judge saying, well, this eliminates any possibility. Had the government abided by its agreement, instead of saying the guidelines are appropriate and said, you know what, we don't oppose acceptance, I believe it would have made a difference to the court. Fourth, I'm sorry, fifth, the government's rhetorical position on all the trauma to the nephew didn't help. Sixth, the court never stated that it would have given the same sentence. Seventh, the court expressed a desire to reduce the offense level by two and knock out use of the computer. The court also expressed an openness to vary below the guidelines. The court said, tell me some reason why this guy makes me say he should really get a variance on pages 368 to 69. And then later said, if there's something I can do or something I should see to vary below the guidelines, I'm willing to consider that. Ninth, the court did grant a variance of eight months for time served. I'm sorry, there are only, well, ten reasons. Excuse me. Ten. Are you misrepresenting things to this court? No, Your Honor, I apologize. And number ten, the guidelines would have been different by five levels. In other words, the use of the computer could have been knocked off. Then you would have had three levels for acceptance. That would have, since the guideline range was 240 months, the maximum, it would have been reduced to 210 to 240. And with the time off from the bottom, the time for credit in state custody would have resulted in a sentence of 202 months. So to answer your question, Your Honor, we have a court that's looking for a way to give a lower sentence. We have five levels, and we have all the other reasons I've stated. Your Honors, for all these reasons, I request that you remand for resentencing. Thank you very much. O'Malley. May it please the Court. My name is Terri Lee O'Malley. I represent the United States in this criminal matter. Your Honors, neither the law nor their application to the facts of this case are as clear and obvious as Mr. Rosales would have you believe. I think that there are three different ways that we could interpret the appellant's argument, and only one of them seems to me to be worth our time today. The first is that there should be a per se rule that if the government makes any recommendation, or makes any promise, I should say, regarding acceptance, that they should be barred from arguing for obstruction. Now, that would be whether the government recommended it or whether the government said, as they did here, that we would not oppose acceptance. Now, that rule would simply not be workable because when the plea is made, of course, no one knows what will be in the PSR, and no one knows what the defendant might do. Where does the PSR, where do the facts and the information in the PSR come from? The facts in this case came from a number of interviews that the, I believe it was. Government agents and the U.S. Attorney's Office. So, shouldn't the U.S. Attorney's Office be aware of the facts and be aware that there was a good chance there would be obstruction of justice? Yes, Your Honor, and that's where I get to the second point, the point that I do think we need to focus on, and that is the timing. My point. The timing here is the government definitely knew, and everyone knew. The government knew from the beginning, and that, Your Honor, is the point to the 28J. I tried to find a court or president in this court that would say that in the event that the government knew the facts that were under the obstruction, that they could not argue for it if they knew it in advance of the plea. I didn't find anything to that effect, so I did a full circuit search, and that's when I offered Hasno Horses and Enriquez. And in both of those cases, while it wasn't, I think, part of the holding, it was definitely dicta and a rejection of the argument that just because the government knows what the facts are, that eventually did lead to an obstruction of justice in probation's opinion so that it ended up in the PSR. Even if that is true, that does not mean that the government is barred from actually arguing for it. And it certainly doesn't say, and I do want to point out that in Hasno Horses, the government had actually promised to recommend acceptance, and the government did get up and say, Your Honor, we stand by our plea agreement. We recommend acceptance. Do you think there was an obligation in this case to bring that to the court's attention, that the agreement was that they would not object to acceptance of responsibility? And I know there was some talk that it was in the PSR, but do you think in the conversation with the court that perhaps the U.S. attorney had some sort of ethical obligation while agreeing that there might be an obstruction of justice, that there was also an agreement not to object to acceptance of responsibility? Your Honor, I don't believe that the United States has a legal obligation to do that. I do think best practice would be to bring that to the court's attention in the beginning. I'm not sure that there was really any point within the sentencing itself where it would have made sense for the trial attorney to interject and say, Your Honor, the government has agreed not to oppose. Also, I do want to point out that the district court did take the plea, so it wasn't a case where the magistrate judge took the plea and the district court was unaware of the terms of the agreement. So the district court there actually took the plea, and it was very clear in the PSR what that agreement was. There is this possibility that you can, under the guidelines, get both acceptance and an obstruction enhancement. So even if we find that just advocating for obstruction is not plain error, which is what the standard is, what about the statement Mr. Sokolow started off with, which to me is the biggest problem for the government, which is that the guidelines did not include acceptance, and the prosecutor says the guidelines are correct. Actually, isn't that saying it's correct not to include acceptance? Well, the prosecutor actually said the guidelines are appropriate and not that the guidelines were correct. What's the difference? The difference here is that that could be considered an agreement as to the facts of the case rather than saying, you know, as I think this through, I don't think there is a difference. When people talk about the guidelines, they're talking about the number. They're talking about the number, yes. And that's also, I mean, most of the cases I found in this circuit were cases where the government had promised a specific offense level and then had advocated, for example, for a career offender enhancement, which this court has said is not an adjustment, that is a new offense level. So why isn't, if she says the guidelines are appropriate, why isn't that the same as basically saying it's appropriate not to include a reduction for acceptance? What she said was she believed that 240 months, the guideline maximum, or I'm sorry, the statutory maximum, was appropriate in this case, and that is, in fact, what the court imposed here, minus eight levels for time served. Well, I'd agree. If it was framed in terms of the ultimate sentence should be X number of months or whatever, I don't see anything in the plea agreement that prevents recommending the particular sentence. But, I mean, to me it is troubling that she says the guidelines, the calculation, is appropriate. She said the guidelines are appropriate, and I agree that the interpretation that the defense is taking and that Your Honor is taking is a clear way to interpret what she said. However, it's not the only way to interpret what she said. She could be saying that I believe that what probation has recommended is correct or appropriate. I think in this case that what it really comes down to is was there a clear and obvious breach? Was there a clear and obvious sign to the government here that they should not have said the guidelines are appropriate? Was it clear and obvious that they should not advocate for obstruction if they had agreed not to oppose responsibility? And as you say, this is on plain error review, and it is the United States' position that Mr. Rosales has not carried his burden. In addition to it not being a clear and obvious error, I would say the record demonstrates very little probability that this alleged breach had any effect on the sentence that the judge actually imposed. She was horrified by Mr. Rosales' actions in trying to convince his nephew, his 15-year-old nephew, to take the fall for his child porn. She was horrified, I would say, by the quality of the material in this case, which, Your Honors, when you look at the PSR, makes it very clear that the guidelines for this man were primarily based on the amount that he had and on the egregious quality of them. Are there certain things that the judge said that would indicate that the sentence would have been the same even if the government would have not spoken up or the government would have said we agreed not to object to the acceptance of responsibility? We have something on the record that indicates that the judge had made up her mind and was going to give that sentence even with that agreement. There's nothing in the sense that you would say in, for example, a crime of violence enhancement where the judge says even if, even if, this is the correct guideline from this range to this range, even if. There's nothing like that here. I think that there is evidence in the content of the sentencing and in the fact that here, Mr. Rosales' trial counsel argued vehemently for a variance. Most of the sentencing, in fact, is his attorney arguing the various reasons why this court should vary downward. And she basically opposed or imposed the statutory maximum. Now, one final thing as far as the effect on his substantial rights is in the event that the court did, in fact, say, okay, I was confused. I did not realize I could give you acceptance. I'm not sure that's a reasonable conclusion because she is an experienced district judge, and it was in the PSR that both can be given. But assuming that for the sake of this argument that that is true, I do not believe that she would fail to give him obstruction. That I do not think there is any evidence for. I think it's possible that she would give acceptance. I'm not sure that it's reasonably probable that she would give acceptance. And finally, it is true that she was bothered by the two-level for use of a computer. So if it were remanded because this court found a clear and obvious breach of the plea agreement, and she said, all right, I am still going to deny you acceptance and give you obstruction, as recommended very powerfully in the PSR, very powerfully in the PSR. So I'll give you that two levels, but, you know, it still doesn't get you below a 240. And if she did, in fact, give him credit for acceptance and reduce those two levels, his sentence would still be within the resulting guideline range. He simply has not shown a reasonably probable change in his sentence on remand in this case. Your Honor, of course, it doesn't matter here because the claim is that the government breached the plea agreement, which means that the agreement, if there was a breach, is null and void, and the defendant is not held to his end of the bargain either. But this defendant did agree to waive his appeal. And in this particular case, it does not especially matter because the breach is the claim that he's bringing, and that's what would make the change in his sentence. But the government still argues to uphold the agreement. Let me give you a hypothetical, and maybe this doesn't apply because we don't know what was the intent of the AUSA who did the plea bargain. But would it be appropriate for the AUSA, knowing that he or she is going to advocate for obstruction of justice, to agree not to oppose acceptance of responsibility and then go into court and advocate for obstruction of justice, knowing when they reached a plea agreement that we're going to do that but not inform the accused or his lawyer of that? Your Honor, that was my third point of how you could take this, and that is if that occurred, if indeed the government went into this agreement in bad faith with no intention of actually upholding what it promised, then that would not be defensible, and I would not stand up here and defend it to you. So that's another way that this could go that I'm not sure that we need to discuss because if there were evidence in the record of that, I would not be defending it. It does seem troubling, though. I mean, the typical—this often arises where the obstruction happens after the plea agreement, and the defendant's out on bond, and between the plea and sentencing, he gets caught with drugs or something, and so now he's got this other offense, and I guess not even an obstruction situation, but it's an issue of is he still entitled to acceptance because he's committed further crime, and that arguably puts the prosecutor in a tough situation because the PSR has information that wasn't before the government when it made the agreement not to oppose acceptance. But here, everything was known at the time of the plea agreement, and that does seem to—even if you don't think it legally matters, it does seem to color what happened. I mean, as Judge Prado said, it could have all been laid out that, okay, I'm agreeing not to oppose acceptance, but I am, given what he did to the nephew, which I think the prosecutor says, I think that's really bad. I am going to argue for obstruction just so we're all clear. Your Honor, that's true. That's the clear case. That's the clear case, and that's, of course, why my first scenario is just not practical because things do come up after the plea. However, I'm not sure that we can say that a trial lawyer always knows whether or not the probation officer is going to consider specific conduct to be obstruction of justice. I don't know that there's an absolute way that any kind of conduct prior to the plea, a trial court can—or, I'm sorry, a trial prosecutor can say without doubt that this was obstruction. And maybe there is. I mean, there certainly—if you threaten to kill witnesses or actually succeed in killing witnesses, I believe that would be a clear-cut case. I mean, this seems highly obstructionist to me to try to pin child pornography on your nephew who had nothing to do with it. So I would think it would have been fairly apparent, at least, that this was a possibility. I mean, the other side of the coin is, I think, a good defense lawyer— I know it wasn't the PD's office at the trial level, but would, at the plea stage, be asking what the ramifications are for possible acceptance, but apparently that didn't happen. No, Your Honor. That is certainly the case, and this case is on plain error. And those facts were known from the beginning. I mean, the obstruction occurred while the agents were actually still searching his home. He went to the school to find his nephew to convince him to do this. When his mother called the nephew, he picked up the phone and told the child's mother that he was fine. So all of this was known at the very beginning. It came up in the detention hearing. It came up in every single hearing after that and every document after that. It was in the factual basis of the plea agreement. At no point did the defense attorney say, all right, but wait a minute. You know what my client did, and I really think that we need to have in this agreement that not only are you not going to oppose acceptance, but you're not going to argue for obstruction. I mean, that was certainly within his rights. Now, the second point, just looking at the timeline here, is that this was in the factual basis for the plea, and it was in the PSR, and one of the times that Mr. Socolow is saying that the government breached the agreement was in its reply to the objections, at which point there was nothing, nothing to keep the attorney from saying, whoa, government, you breached your agreement. I need you to actually, I need you to withdraw that, and I need you to abide by what my client agreed to. He did not do that. He did not even attempt to withdraw his plea. There was no indication whatsoever that he believed the government had breached their plea agreement until this appeal. I'm running low on time, Your Honors. If you have any other questions, I'm happy to address them. No, we're running low on questions, so. Good timing, then. The United States respectfully requests this court to dismiss this appeal or any alternative to affirm his sentence and conviction. Your Honors, just a few points. Number one, I agree it's on plain error, and I won't subject you to my list of ten reasons for reversal again. Number two, as the court knows, bad faith doesn't matter, so that's just a red herring. Number three, this appeal is not about obstruction of justice. It's about the government's breach to not oppose acceptance. Number four, the defense lawyer did explore the ramifications for acceptance and got the government to promise not to oppose acceptance. I just want to reiterate, there are two breaches. One is at sentencing where they said the guidelines were appropriate, and one is at the record on page 424 in the government sentencing objection. It says, if the defendant had not obstructed enforcement, law enforcement, his guideline range would be 40 and a 37 with acceptance, which is saying he can't get acceptance. He would have to not have obstructed to have gotten acceptance. That's a breach. That's not opposing. And finally, I just want to say, with regard to the judge being so horrified, the judge was so horrified at this that she said she normally, and had it made a difference, would not have opposed the two levels for use of computer. She gave eight months credit for the time he served in state jail. She specifically said, if there's a reason I should vary downward, please tell me, because I'm willing to consider it. It's clear from the record that the judge was willing to give every consideration to giving a lower sentence. For all these reasons, Your Honor, we respectfully request that you remand for resentencing and find a breach of the plea agreement. Thank you. Thank you. Thank you both. The court will take a short break.